IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID HARRIS,                      )
                    Plaintiff,     )
                                   )
         vs.                       )      Civil Action No. 10-328J
                                   )      Judge Kim Gibson/
UNITED STATES MARSHAL SERVICE;     )      Magistrate Judge Francis X. Caiazza
and 3 UNKNOWN MARSHALS,            )
                                   )
                    Defendants.    )

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is recommended that, pursuant to the screening provisions of the PLRA, the complaint be

dismissed prior to service for failure to state a claim upon which relief can be granted.

### II.  REPORT

#### A.    Relevant Procedural History

David Harris ("Plaintiff"), is a Federal prisoner, currently housed at FCI-Loretto.   Plaintiff

has filed this Bivens[3] action against the United States Marshal Service and three unnamed federal

Marshals.   Plaintiff complains that when he was transferred from a prison in Baltimore to

FCI-Loretto, his legal property that he was carrying with him was taken by one of the three

Marshal defendants and placed on or in the bus that Plaintiff was then going to be transported on.

Once Plaintiff was on the bus, he requested his legal property and was told by the U.S. Marshal

driving the bus that he would get his property once he arrived at his new prison.   After Plaintiff

arrived at FCI-Loretto, however, he had his attorney contact the U.S. Marshals, who informed the

---

[3]    Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

attorney that Plaintiff's property was destroyed.     Plaintiff claims that the loss or destruction of his property violated his "right of access to the Courts."   ECF No. [1-3] at 2, ¶ III.

Plaintiff must identify an injury to a legal case in order to establish a denial of access to courts claim. Because the only case allegedly injured by the loss of his legal property was his criminal appeal and because he had an attorney appointed by the Federal Courts to prosecute his appeal and such appointment provides him access to courts as a matter of law, Plaintiff's denial of access to courts claim necessarily fails.   Hence, the complaint must be dismissed for failure to state a claim upon which relief can be granted.

**B.**     **Applicable Legal Principles**

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody.   Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).   Because Plaintiff is a "prisoner" who has filed a civil action against a "governmental entity or officer or employee of a governmental entity" within the meaning of 28 U.S.C. § 1915A(a), the screening provisions of Section 1915A(b) apply herein.   Because Plaintiff was a prisoner granted *in forma pauperis* status, ECF No. [3], the screening provisions of 28 U.S.C. § 1915(e) apply as well.   These screening provisions permit a court to dismiss complaints if the court determines them to be frivolous, malicious, or if they fail to state a claim upon which relief may be granted.

When performing a court's mandated function of *sua sponte* reviewing a complaint under the screening provisions of the PLRA to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).   Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va.

2

1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), aff'd, 116 F.3d 473 (4th Cir. 1997) (Table).

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6), and hence, under the screening provisions of the PLRA, if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint[.]" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint may be dismissed where a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.___, 129 S.Ct. 1937, 1949 (2009).

Since this is a Bivens action, the complaint will state a claim only if it sufficiently alleges a deprivation of any right secured by the Constitution or federal law which was caused by federal government actors. Evans v. Ball, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A Bivens action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials"), overruled on other grounds as recognized in, Izen v. Catalina, 382 F.3d 566, 570 n.3 (5th Cir. 2004); Lowry v. Federal Bureau of Prisons, No. Civ.A. 05-CV-131-JBC, 2005 WL 1523564, *1 (E.D.Ky. June 24, 2005) ("To state a claim that is cognizable as a Bivens action, the plaintiff must plead two essential elements. He must show that he has been deprived of rights secured by the Constitution or laws of the United States and that the defendants allegedly depriving him of those rights acted under color of federal law.").

In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.   See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); DiNicola v. DiPaolo, 945 F. Supp. 848, 854 n.2 (W.D. Pa. 1996) (court is entitled to take judicial notice of public records).

## C.     Discussion

In order to state a cognizable claim of being denied access to courts, a plaintiff must identify an "actual injury."   Christopher v. Harbury, 536 U.S. 403 (2002).

The Supreme Court declared that the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong . . . . the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court."   Christopher, 536 U.S. at 414-15. Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim."   Id. at 415.   With this understanding, the Court then went on to hold that

> Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant. Although we have no reason here to try to describe pleading standards for the entire spectrum of access claims, this is the place to address a particular risk inherent in backward-looking claims [i.e., claims, such as the one Plaintiff Harris brings herein, i.e., that past behavior of officials have caused him to lose access to courts in the past]. Characteristically, the action underlying this sort of access claim will not be tried independently, a fact that enhances the natural temptation on the part of plaintiffs to claim too much, by alleging more than might be shown in a full trial focused solely on the details of the predicate action.

Hence the need for care in requiring that the predicate claim be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope. And because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim.

Id., at 416 (footnotes and citations omitted).

Plaintiff's entire allegations contained in the complaint, concerning the apparent injury are as follows:

> In the approximate year of 2009, Petitioner [i.e., Plaintiff] was interviewed by two Baltimore County Homicide detective[s]. At this time it was requested by the detectives to turn over a confession letter to a murder that he [Plaintiff] had in his possession. But petitioner [i.e., Plaintiff] was unable to do so because the confession letter was in petitioner['s] legal material which was destroyed by U.S. Marshals. Also as a direct result of petitioner[']s legal material being unjustly destroyed his direct appeal was denied on May 25, 2010.

ECF No. [1-3] at 5 to 6.

Plaintiff's complaint suffers at least two flaws under Christopher. First, Plaintiff has failed to sufficiently describe in the operative complaint what case he sought to bring that was interfered with in relation to the murder confession letter, so that we may apply the non frivolous test. Additionally, Plaintiff failed to even mention any remedy with respect to the putative case related to the murder confession letter as required by Christopher. Thus, the complaint fails to state a claim upon which relief can be granted with regard to the murder confession letter.

Second, insofar as Plaintiff's direct appeal is concerned, Plaintiff cannot have suffered a denial of access to court because in the bringing of the direct appeal, Plaintiff was represented by

counsel and continued to be until counsel was permitted to withdraw after the appeal was decided. Such representation provided Plaintiff access to court as a matter of law.

We take judicial note of the dockets of the Court of Appeals for the Fourth Circuit in Plaintiff's direct appeal of his criminal case.   United States v. David Harris, No. 08-5146 (4th Cir.).[1]   Those dockets reveal that Plaintiff's appeal was filed on November 21, 2008, (more than one month prior to the January 5, 2009 loss of his legal property) and the Court of Appeals for the Fourth Circuit appointed Plaintiff counsel in the person of Kenneth Wendell Ravenell on that same date.   Id., ECF No. [2].   On December 23, 2008, Plaintiff, through Attorney Ravenell, apparently filed a motion to have Attorney Ravenell withdraw.   Id., ECF No. [ 9].   On December 31, 2008, the Court terminated the motion to withdraw and appointed Attorney Gary Proctor to represent Plaintiff.   Attorney Proctor filed an Anders no-merit brief on April 20, 2009.   Id., ECF No. [26]. Thereafter, on June 15, 2009, Attorney Proctor filed a motion to withdraw.   Id., ECF No. [41]. The Court of Appeals entered an order on June 16, 2009, deferring ruling on the motion to withdraw "pending review of the appeal on the merits."   Id., ECF No. [43] at 1.   Thereafter, Plaintiff filed several pro se briefs/motions.   On May 25, 2010, the Court issued its opinion, affirming Plaintiff's conviction.   Id., ECF No. [57].   On that same date, Attorney Proctor filed another motion to withdraw.   Id., ECF No. [59].   The Court granted that motion on June 15, 2010.   Id., ECF No. [66].   Hence, it appears that Plaintiff was represented by an attorney in order

---

[1]   The dockets of the Court of Appeals for the Fourth Circuit in Plaintiff's case are available through PACER at:

https://ecf.ca4.uscourts.gov/cmecf/servlet/TransportRoom?servlet=CaseSummary.jsp?caseNum=08-5146&dktType=dktPublic&incOrigDkt=Y&incDktEntries=Y

(site last visited 3/15/2011).

to bring his appeal.[2]   Thus, Plaintiff had access to the Courts as a matter of law through his

appointed counsel and so he cannot make out a First Amendment right of access to courts claim.

The rule is that where an inmate is represented by counsel, his right of access to the courts

is satisfied as a matter of law.   Lamp v. Iowa, 122 F.3d 1100, 1106 (8th Cir. 1997) ("For, once the

State has provided a petitioner with an attorney in postconviction proceedings, it has provided him

with the 'capability of bringing contemplated challenges to sentences or conditions of confinement

before the courts.'") (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)); Schrier v. Halford, 60

F.3d 1309, 1313-1314 (8th Cir. 1995) (having appointed counsel is one way in which state can

shoulder its burden of assuring access to the courts);   Annis v. Fayette County Jail, NO. CIV.A.

---

[2]   Furthermore, the right of access to the courts is just that, the right of **access**, as the Court in
Lewis v. Casey, 518 U.S. 343 (1996) made clear.   The constitutional right is only the right to be
able to bring to a court's attention a grievance that the inmate had, it does not include the right to
discover unconstitutional violations or to effectively litigate once in court.   The Court in Lewis
held that

> [i]t must be acknowledged that several statements in Bounds went beyond
> the right of access recognized in the earlier cases on which it relied, which was a
> right to bring to court a grievance that the inmate wished to present, see, e.g., Ex
> parte Hull, 312 U.S. at 547-548, Griffin v. Illinois, 351 U.S. at 13-16, Johnson v.
> Avery, 393 U.S. at 489.   These statements appear to suggest that the state must
> enable a prisoner to discover grievances, and to litigate effectively once in court.
> See Bounds, 430 U.S. at 825-826, n. 14.   These elaborations upon the right of
> access to the courts have no antecedent in our pre-Bounds cases, and we now
> disclaim them.   To demand conferral of such sophisticated legal capabilities upon
> a mostly uneducated and indeed largely illiterate prison population is effectively to
> demand permanent provision of counsel, which we do not believe the Constitution
> requires.

Lewis, 518 U.S. at 354.   See also Cornett v. Donovan, 51 F.3d 894, 898-99 (9th Cir. 1995)
(holding that the right of access "does not require that a state provide assistance beyond the
pleading stage."); Knop v. Johnson, 977 F.2d 996, 1006-07 (6th Cir. 1992) ("[Prisoners] are
entitled, rather, to 'access'– which means getting the courthouse door opened in such a way that it
will not automatically be slammed shut on them."); Nordgren v. Milliken, 762 F.2d 851, 855 (10th
Cir. 1985) (holding that the right of access does not extend beyond "completion of the complaint
for a federal habeas or civil rights action.").

07-1628, 2008 WL 763735, at *1 (W.D.Pa. Mar 20, 2008); Sanders v. Rockland County Correctional Facility, No. 94 Civ. 3691, 1995 WL 479445 at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."). Indeed, what the court held in Rogers v. Thomas, No. 94-4692, 1995 WL 70548 at *2 (E.D.Pa. Feb. 17, 1995), aff'd, 65 F.3d 165 (3d Cir. 1995) (Table), applies equally here: notwithstanding that legal papers were taken from plaintiff inmate by prison officials, "plaintiff was not denied access to the courts because he was represented by court-appointed counsel, during the entire pendency of the appeal to which the legal papers related. Thus, plaintiff was actually provided with, not denied, legal assistance." Accordingly, Plaintiff's complaint fails to state a right of access to courts claim.

Alternatively, Plaintiff has utterly failed to identify a remedy that this Court can provide to him, as is required by Christopher that cannot be provided to him other than in this present suit. See, e.g., Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (a plaintiff must establish "that [he] ha[d] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."). For this reason alone, his complaint fails to state a claim of denial of access to courts.

Hence, Plaintiff's First Amendment access to courts claim should be dismissed for failure to state a claim upon which relief can be granted.

### III.  CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1) and Local Civil Rule 72, the parties are allowed to file objections to the District Judge within fourteen days of service of this report. Failure to timely file objections will constitute a waiver of any appellate rights in the Court of Appeals. Brightwell v. Lehman, __ F.3d __, 2011 WL 635274, *5 n.7 (3d Cir. Feb. 9,

2011).   Any party opposing the appeal may file their response to the appeal in accordance with

Local Civil Rule 72.


<div style="margin-left: 40%;">

s/Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

</div>

Dated:   April 6, 2011

cc:      The Honorable Kim R. Gibson
         United States District Judge

         DAVID O. HARRIS
         34555-037
         FEDERAL CORRECTIONAL INSTITUTION - Loretto
         Inmate Mail/Parcels
         P.O. BOX 1000
         LORETTO, PA 15940