IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HARRIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10-328J |
| | ) | |
| UNITED STATES MARSHAL SERVICE; | ) | Judge Kim Gibson/ |
| and 3 UNKNOWN MARSHALS, | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

The above-captioned pro se prisoner civil rights complaint was received by the Clerk of

Court on December 30, 2010, and was ultimately referred to recalled Magistrate Judge Francis X.

Caiazza for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. §

636(b)(1), and Local Civil Rules 72.C and D.

Magistrate Judge Caiazza's Report and Recommendation ("the Report"), ECF No. [8],

filed on April 6, 2011, recommended that the case be dismissed prior to service because Plaintiff's

complaint failed to state a denial of access to courts claim.   Plaintiff was informed that, in

accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the local rules,

he had a specific period of time in which to file his objections.   After being granted an extension

of time in which to file his objections, Plaintiff filed objections on May 6, 2011.   ECF No. [10].

After the Report and objections were filed, this case was referred to Magistrate Judge Maureen P.

Kelly.   ECF No. [11].   The Report recommended dismissal of the complaint because Plaintiff

failed to adequately identify an injury to a lawsuit due to the loss/destruction of Plaintiff's legal

materials which occurred in January 2009.   More specifically, the Report noted that although

Plaintiff referenced a confession letter to a murder Plaintiff failed to:   1) describe the suit that was

1

allegedly lost to Plaintiff in relation to the murder confession letter and 2) failed to even mention any remedy regarding the putative case that could only be accomplished by this suit and not by another means. ECF No. [8] at 5. The second case that Plaintiff referenced was his direct appeal of his criminal conviction. The Report noted that because Plaintiff was appointed counsel in that case, Plaintiff's access to courts was satisfied as a matter of law. Id. at 6 to 7.

In his objections, Plaintiff does not cure these defects. Rather, he mentions three apparently new cases for which he claims that he was denied access to the courts. None of Plaintiff's contentions merit rejection of the Report.

Alleged Strip Search Claim

The first case that Plaintiff mentions is an alleged Fourth Amendment case which he wanted to file for a strip search that allegedly occurred in approximately April of 2008. Plaintiff complains that in the legal materials lost by the United States Marshals were witness affidavits of the alleged strip search as well as legal research. This claim fails on several grounds.

First, Plaintiff utterly fails to explain how the loss of the legal materials prevented him from filing a civil rights complaint given that a complaint is not required to be accompanied by affidavits nor legal research and given that the right of access is just that, access, not the ability to effectively litigate once in court, as the Report correctly pointed out. See, e.g., .Cornett v. Donovan, 51 F.3d 894, 898-99 (9th Cir. 1995) (holding that the right of access "does not require that a state provide assistance beyond the pleading stage."); Knop v. Johnson, 977 F.2d 996, 1006-07 (6th Cir. 1992) ("[Prisoners] are entitled, rather, to 'access'– which means getting the courthouse door opened in such a way that it will not automatically be slammed shut on them."); Nordgren v. Milliken, 762 F.2d 851, 855 (10th Cir. 1985) (holding that the right of access does not extend beyond "completion of the complaint for a federal habeas or civil rights action.").

2

Secondly, Plaintiff fails to explain how the loss of his legal papers in January 2009 prevented him from gaining access to the courts in order to file his lawsuit, given that he was present at the strip search event and apparently knew the names of the witnesses and so presumably could again acquire such affidavits or at the very least could have filed the lawsuit and acquired the names of the witnesses in discovery and, once having acquired their names through discovery, again acquired affidavits from them. Insofar as the legal research materials are concerned, Plaintiff has had access to a law library since April 2009, when the legal papers were allegedly lost and presumably could re-create that lost legal research. See, e.g., Whitney v. Barkley, No. 10-1705, 2011 WL 1230351 at *2 (W.D. Pa. Feb. 9, 2011) ("To the extent Plaintiff is complaining that he was denied access to courts by the destruction of his legal property, he has failed to . . . to allege why he could not have still brought that suit notwithstanding the alleged destruction of his legal property (e.g., why he could not simply recreate the allegedly destroyed complaint)"). Lastly, we note that Plaintiff attached administrative remedy forms to his objections indicating that he filed a first level grievance concerning the strip search but he did not attach any subsequent appeals to the regional office or to the final level of appeal. To the extent that Plaintiff failed to file any subsequent appeals of his grievance, any suit brought in federal court concerning the strip search would be frivolous because it would be dismissible for failure to exhaust/procedural default. Thus, Plaintiff would have suffered no injury to a non-frivolous suit due to the loss of his legal property insofar as it relates to the putative strip search case. For these reasons, Plaintiff fails to state a claim of denial of access to courts as to this putative strip search case.

Section 2255 Motion

The second case that Plaintiff mentions is his Section 2255 motion in his criminal case that

3

was the subject of the direct appeal which the Report addressed. In his objections, Plaintiff

contends that "if he is given an attorney and a hearing, he can legally show how he suffered a great

injury from the United States Marshals Service destroying all of his legal papers." ECF No. [10]

at 3. The Court notes that the Section 2255 motion is currently pending. U.S. v. Harris,

1:01-cr-00115-BEL-3 (D. Md. ECF No. [574] filed 12/31/10). Hence, demonstrably, Plaintiff

has not been denied access to courts in order to litigate his Section 2255 motion and has thus

suffered no injury to his right of access to the courts. See, e.g., Atwell v. Metterau, 255 F.App'x

655, 658 (3d Cir. 2007) ("Although Atwell asserted that his litigation efforts in several cases were

impeded, the dockets for those cases reflect that one case is still being litigated and the others could

not have been affected by the alleged taking of documents. And Atwell only argues in his brief that

he lost his research notes. Atwell was released from prison one day after the officers allegedly took

the documents, and he does not contend that he was unable to conduct legal research after his

release. He has not alleged an actual injury resulting from the loss of his legal papers."").

Moreover, as the Report correctly notes, the right of access is just that, access, and **not** the ability

to litigate effectively once one has passed the pleading stage. See, e.g., Cornett v. Donovan;

Knop v. Johnson; Nordgren v. Milliken. Lastly, we note that Plaintiff drafted a letter to the

District Court judge in his criminal case in April 2009, complaining of the very same thing he

complains of in this current lawsuit, namely that the U.S. Marshals seized his legal materials. U.S.

v. Harris, 1:01-cr-00115-BEL-3 (D. Md. ECF No. [549] filed 4/30/2009). In that letter, Plaintiff

requested the legal papers be returned from the Marshals or, in the alternative, he wanted "copies

of all the past letters and motions that I sent to Judge Leggs in regard to my case and me being

incarcerated." Id., ECF No. [549] at 2. We take further note that the District Judge wrote back to

Plaintiff twice, once indicating that Plaintiff's Appellate Attorney Proctor had forwarded to

Plaintiff all of Plaintiff's papers in Proctor's possession and that the Judge had asked Attorney

Ravenell (i.e., Plaintiff's trial counsel in his criminal case) to look into the matter. Moreover, the

District Judge advised Plaintiff that if he chose to file a habeas/Section 2255 motion, "you may

resubmit a motion for copy work for the Court's consideration." Id., ECF No. [560] at 1. In

addition, the District Judge, in another letter, indicated that if Plaintiff makes specific requests for

copies of documents from Attorney Ravenell, Attorney Ravenell's office would make copies of

those requested documents for Plaintiff. Id., ECF no. [564] at 1. In light of this, Plaintiff cannot

possibly show injury as to the pending Section 2255 motion.

*Coram Nobis* Petition

The third case Plaintiff mentions is a *coram nobis* petition that Plaintiff allegedly filed in

2010 in the State Courts of Maryland. Specifically, Plaintiff complains that "he was unable to

properly argue the case because vital paperwork in defense of his argument pertaining to the case

were [sic] destroyed by the U.S. Marshals and, as a result, Harris' petition for *Coram Nobis* was

denied. E.g. The loss of research material, typewriter ribbon, correction tape, and copying card in

the approximate amount of $150.00 and legal information from the State of Maryland which

Plaintiff Harris does not have access to." ECF No. [10] at 3. Again, we find that Plaintiff's

description of this *coram nobis* petition utterly lacking under Christopher v. Harbury, 536 U.S. 403

(2002) so as to be able to properly perform the non-frivolous inquiry that Christopher requires. In

addition, Plaintiff fails to explain why "information from the State of Maryland" which Plaintiff

does not have access to, cannot be re-acquired by Plaintiff simply making the proper requests from

the State of Maryland officials.

Accordingly, after *de novo* review of the pleadings and the documents in the case, together

with the Report and Recommendation, the following order is entered:

AND NOW, this 15th day of August, 2011,

IT IS HEREBY ORDERED that the case is dismissed pre-service pursuant to the PLRA because the complaint fails to state a claim upon which relief can be granted. This dismissal is without prejudice to Plaintiff filing an amended complaint by August 30, 2011, wherein he cures the only deficiency he can, namely, he can more fully describe the *coram nobis* petition he allegedly filed in the State Courts of Maryland, indicating in which Maryland Court he filed the *coram nobis* petition and giving the docket number and caption of that case and describing what claims he made in that *coram nobis* petition, and what disposition the Maryland State Court made. Plaintiff may attach to the amended complaint a copy of his *coram nobis* petition and any State Court order or opinion addressing that petition. Plaintiff should also specify what papers the Marshals allegedly took and what significance those papers had to his filing of the *coram nobis* petition. Failure to file any such amended complaint by August 30, 2011, will result in the Court dismissing the case with prejudice.

IT IS FURTHER ORDERED that the Report and Recommendation, ECF No. [8], filed on April 6, 2011, by Magistrate Francis X. Caiazza, is adopted as the opinion of the Court, as supplemented by this Memorandum Order.

Kim R. Gibson
United States District Judge

Dated:

cc:    The Honorable Maureen P. Kelly
       United States Magistrate Judge

       DAVID O. HARRIS
       34555-037
       FEDERAL CORRECTIONAL INSTITUTION - Loretto
       Inmate Mail/Parcels

P.O. BOX 1000
LORETTO, PA 15940